```
UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
-------------------------------------------------------- X
FARA D'ANGELO,                                           :   3:08-CV-1548 (JCH)
                                                         :
                    Plaintiff,                           :
                                                         :   AMENDED COMPLAINT
           -against-                                     :
                                                         :
WORLD WRESTLING ENTERTAINMENT,                           :   PLAINTIFF DEMANDS A
INC.,                                                    :   TRIAL BY JURY
                                                         :
                    Defendant.                           X
--------------------------------------------------------
```

Plaintiff, Fara D'Angelo ("Plaintiff" or "Ms. D'Angelo"), by her attorneys, The Boyd Law Group, PLLC and through her First Amended Complaint against World Wrestling Entertainment, Inc. ("Defendant" or "WWE"), alleges as follows:

## THE PARTIES

1. Plaintiff is a resident of the State of New Jersey.

2. Plaintiff resides at 99 North Street, Elmwood Park, New Jersey 07407.

3. Plaintiff resided in the State of New York during her employment at WWE, until she became a resident of the State of New Jersey around October 2005.

4. Plaintiff is a heterosexual woman opposed to discriminatory practices.

5. Defendant WWE is a Delaware corporation with headquarters located at 1241 East Main Street, Stamford, Connecticut 06902.

## NATURE OF THE ACTION

6. This is a civil action brought against Defendant for discrimination and harassment based on sex. The action is brought seeking damages and remedies under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, (hereinafter "Title VII").

7. Specifically, Defendant discriminated against Plaintiff D'Angelo because of her sex, by horribly and offensively harassing her in the workplace.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this action under 28 U.S.C. § 1331 for civil actions arising under the laws of the United States and 28 U.S.C. § 1343 for actions under laws providing for the protection of civil rights. Jurisdiction is specifically conferred on this Court by 42 U.S.C. § 2000e-5(f).

9. Declaratory and injunctive relief are sought under 28 U.S.C. § 2201 *et seq.*, and equitable and other relief is sought under 42 U.S.C. § 2000e-5(g).

10. Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred in the District of Connecticut.

## ADMINISTRATIVE PREREQUISITES

11. Plaintiff dual-filed a charge of discrimination under both federal and state law against Defendant with the Connecticut Commission on Human Rights and Opportunities (hereinafter "CHRO") on or about September 28, 2006.

12. CHRO issued a release of jurisdiction notice to Plaintiff's undersigned counsel on or about July 11, 2008.

13. A copy of this release is annexed hereto as Exhibit A.

14. The Equal Employment Opportunity Commission (hereinafter "EEOC") issued a notice of right to sue to Plaintiff's undersigned counsel on or about July 18, 2008.

15. A copy of this right to sue is annexed hereto as Exhibit B.

16. Plaintiff's filing is, thus, within the ninety (90) days required under the law.

## FACTS

17. Plaintiff began working for WWE in April of 2004 as a Global Licensing Coordinator.

18. Her job duties involved managing the international business of more than fifty (50) licensees, including product approvals, royalty collections, contract agreements, and new business development.

19. The formal reviews of Plaintiff's work performance were always satisfactory or better,

throughout the period of her employment at WWE.

20. Plaintiff was assigned to work at Defendant's facility located at 1241 East Main Street, Stamford, Connecticut 06902.

21. Plaintiff was assigned to work under the direct supervision of Alex Romer, Senior Director of International Consumer Products (hereinafter "Romer").

22. As a Global Licensing Coordinator, Plaintiff's job duties involved daily communication and approval from Romer although he was based in London, England.

23. Plaintiff also met with Romer on numerous business trips.

24. Almost from the beginning of her employment, Romer began making Plaintiff very uncomfortable through his words and actions.

25. Since 2005, Romer started sexually harassing Plaintiff.

26. Although Romer was married and Plaintiff was never attracted to him, he started making sexual advances to her that was frequent and offensive.

27. Romer started sending her text messages and calling her on the phone at 1 am on a frequent basis.

28. On more than one occasion, Romer asked Plaintiff about her sex life and probed her personal relationships, like who she was dating.

29. Plaintiff would change the subject when Romer broached these subjects, but she did not report the conduct immediately because he was her boss and she did not want to jeopardize her job.

30. In June of 2005, Romer touched Plaintiff's waist in a sexually suggestive manner at a business function.

31. This touching was completely unwelcome to Plaintiff, and she felt extremely offended, uncomfortable, and disturbed.

32. This touching was witnessed by Bernadette Hawkes (hereinafter "Hawkes"), a Senior

Coordinator of Quality Assurance.

33. Hawkes's position was more senior than Plaintiff's.

34. When Hawkes later brought up the incident with Plaintiff, Plaintiff expressed her discomfort and concerns about Romer's harassment to Hawkes.

35. Hawkes only response, however, was that Plaintiff should switch jobs.

36. Romer also frequently made inappropriate comments that made Plaintiff feel extremely nervous, uncomfortable, and offended.

37. Around October of 2005, for instance, Romer told Plaintiff she had a nice "tail."

38. On or about January 10, 2006, Romer told Plaintiff she was a "naughty girl."

39. Romer often addressed Plaintiff by a number of pet names that he had for her, including "darling," "precious," "special," and "tinkerbell."

40. Romer also pressured Plaintiff to drink alcohol when he was with her.

41. Romer told Plaintiff that he wanted her to have sex with him, and that the "ball was in her court."

42. Plaintiff was extremely agitated and offended by Romer's words and conduct.

43. Plaintiff also felt that Romer was pressuring her to have an affair with him, based on his authority over her as her supervisor.

44. Plaintiff felt trapped, nervous, anxious, and helpless.

45. Plaintiff attempted to seek help from Mike Archer, Senior Director of Quality Assurance (hereinafter "Archer").

46. She described the sexual harassment Romer was subjecting her to, and the pressure he was putting on her.

47. Although Archer expressed concern and sympathy, he did not offer any help with the harassment she was reporting to him.

48. Archer did not tell anyone about Plaintiff's claim of sexual harassment, and did not

encourage her to tell anyone either.

49. Rather, Archer encouraged Plaintiff to look for a new job.

50. After her discussions with Hawkes and Archer, Plaintiff felt completely discouraged about the possibility that WWE management would help her.

51. Both Hawkes and Archer suggested that she look for a new job when she reported Romer's conduct to them.

52. Plaintiff understood that no one at WWE wanted her to report Romer's sexual harassment.

53. She also understood that her job, not Romer's, would be jeopardized if she took further steps to try and report his sexual harassment.

54. Plaintiff tried her best to stop Romer from acting inappropriately towards her.

55. In January 2006, for instance, she told him he was smothering her.

56. She told him she did not like to be touched.

57. Romer did not stop.

58. On or about February 2, 2006, Romer asked Plaintiff to have dinner with him on Valentine's day.

59. Plaintiff refused his invitation.

60. Romer commented that the idea of Plaintiff doing Karate was "fun and sexy."

61. Romer told Plaintiff he would help her at work by putting his dick on the line for her.

62. Around April 2006, Romer caressed Plaintiff's head in a manner that made her extremely uncomfortable, over her objection.

63. Around April 2006, Romer asked Plaintiff to go on a personal vacation with him without telling anyone else.

64. On more than one occasion, Romer stared noticeably at Plaintiff's face during business meetings where other people were present.

65. On one occasion, Romer asked Plaintiff for a "goodbye hug," then pressed his body to hers

in a manner that made Plaintiff feel extremely offended and victimized sexually.

66. Plaintiff pulled away immediately.

67. On one occasion, Romer attempted to pressure Plaintiff into kissing him, by standing in her way and positioning his lips close to hers.

68. Plaintiff continued to object to such unwelcome advances, but Romer did not stop.

69. Plaintiff felt trapped and helpless.

70. Plaintiff believed that there was nothing she could do to make Romer stop, since he had ignored her objections and no one else at WWE had supported her or helped her.

71. Plaintiff began seeing a therapist, and also began to look for another job.

72. In early May 2006, Plaintiff tendered her resignation, then formally reported the sexual harassment that she had been subjected to by Romer to Human Resources.

## CAUSE OF ACTION

### (Sexual harassment in Violation of Title VII)

73. Plaintiff repeats and realleges the allegations contained in the paragraphs above as if separately set forth herein.

74. As a woman, Plaintiff is a member of a protected class within the meaning of Title VII.

75. Defendant is an employer within the meaning of Title VII.

76. Defendant harassed and discriminated against Plaintiff because of her sex.

77. Plaintiff was constructively discharged from her employment due to the hostile work environment created by Defendant's acts and omissions.

78. Plaintiff is, thus, entitled to relief.


WHEREFORE, while reserving the right to seek additional damages and plead additional causes of action as available, Plaintiff demands judgment against Defendant as follows:

    A.    A declaratory judgment in favor of Plaintiff Fara D'Angelo, against Defendant

WWE, declaring that Defendant has violated Title VII by discriminating against and harassing Plaintiff based upon her sex.

B.     On all applicable causes of action, back pay and benefits and front pay and benefits, plus compensatory and punitive damages, all in amounts to be determined at trial, as well as attorneys' fees, costs and interest;

C.     Such other and further relief as this Court deems just and proper.

Dated:  New York, New York
         March 25, 2009

THE BOYD LAW GROUP, PLLC

By: /s/ Patrick J. Boyd
     Patrick J. Boyd
     Attorneys for Plaintiff
     230 Park Avenue, Suite 1000
     New York, New York 10169
     Tel: (212) 808-3054