## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

```
-------------------------------------------------- X
FARA D'ANGELO,                                     :
                                                   :    Case No. 3:08-CV-1548(JCH)
                        Plaintiff,                 :
                                                   :
              v.                                   :
                                                   :
                                                   :
WORLD  WRESTLING  ENTERTAINMENT,                   :
INC.,                                              :    OCTOBER 26, 2009
                        Defendant.                 :
                                                   :
-------------------------------------------------- X
```

## MOTION TO DISMISS COMPLAINT OR IN THE ALTERNATIVE TO COMPEL AND FOR SANCTIONS

The Defendant, World Wrestling Entertainment, Inc. ("WWE"), hereby respectfully moves this Court for an order, pursuant to Fed. R. Civ. P. 37(b)(2)(A)(v), dismissing the Complaint in its entirety due to Plaintiff's obstructive and dilatory actions, in contravention to the parties' discovery plan pursuant to Fed. R. Civ. P. 26(f). In the alternative, in the event this Court deems dismissal not warranted, the Defendant respectfully requests that this Court enter orders pursuant to Fed. R. Civ. P. 37(a)(3)(B), and (5), and (d) as set forth below.

## NATURE OF THE ACTION

This action was filed by former WWE employee, Fara D'Angelo, on October 9, 2008. The original Complaint contained two counts; the first for hostile environment sexual harassment in violation of Title VII, and the second for the same claim but arising under Connecticut state law. After a discussion between the parties whereby it was pointed out to Plaintiff's counsel that the state law claim was time barred, the Complaint was voluntarily amended to delete the second count. Thus, the operative Complaint contains only one Title VII based count.

Ms. D'Angelo alleges she was sexually harassed by her former supervisor during her WWE employment. She resigned that employment, and despite that WWE terminated the alleged harasser's employment before she left, and offered her another position at a higher status and salary, Plaintiff nevertheless left her employment to take another job offer. At her subsequent position, she is earning a higher salary.

The parties dispute whether Ms. D'Angelo properly lodged a complaint of sexual harassment prior to giving her notice of resignation to WWE, but even Ms. D'Angelo acknowledges she never brought such a complaint directly to WWE's Human Resource department. Rather, she claims she brought the harassment to the attention of certain members of WWE management, and/or they directly witnessed behavior which should have been reported. WWE contends that the first notice it had of this complaint was when Ms. D'Angelo provided notice of resignation, and that they promptly investigated and took remedial action before her last day of work. WWE further asked that Plaintiff remain in its employ, even offering her a promotion and increased salary.

## BACKGROUND PERTINENT TO THIS MOTION

On February 24, 2009, this Court, on its own initiative, issued an Order to Show Cause why Plaintiff's counsel's appearance should not be stricken as he is not a member of the Bar of this Court, had no local counsel at the time, and had not moved to be admitted pro hac vice. This began the pattern of Plaintiff's counsel's repeated failures to abide by the Rules of this Court, and the general Rules applicable to proper discovery.

Specifically, during April 2009, counsel for the parties commenced their Fed. R. Civ. P. 26(f) "conference" via email and telephone. On April 3, 2009, the undersigned wrote Plaintiff's counsel asking him when he would be available for the Rule 26(f) conference. Given that

Plaintiff's counsel did not reply to the April 3 email for over two weeks, on April 21, 2009, the undersigned sent a second email to Plaintiff's counsel reminding him of this Court's order regarding the Rule 26(f) discovery plan. After several discussions regarding the discovery deadline in particular, the joint Report of Parties' Planning Meeting was ultimately submitted on April 29, 2009. Noteworthy at this juncture, in that report, Plaintiff's counsel did not request any specific search terms be applied to electronic discovery searches. The Defendant, as permitted by the Rules, had already served the Plaintiff with its Requests for Production dated April 24, 2009, after the parties had commenced their "26(f) conference." Simultaneously, Defendant noticed Plaintiff's deposition for May 29, 2009. (Ex. 1.)

The Court modified the proposed Rule 26(f) discovery plan, including shortening the deadline for fact discovery, so that said deadline was set for November 1, 2009. This modification was pointed out by WWE's counsel to Plaintiff's counsel on May 20, 2009 in an email wherein Defendant was attempting to ascertain the anticipated date of receipt of Plaintiff's discovery responses. (Ex. 2.) In this communication, the undersigned further requested from Plaintiff's counsel information regarding Plaintiff's and his availability for Plaintiff's deposition, making clear that Defendant was amenable to rescheduling the noticed deposition for a mutually convenient date.

In the absence of a response for a full week, on May 27, 2009, Defendant's counsel wrote Plaintiff's counsel again, reminding him that Plaintiff's production was due. (Ex. 3.) On or about that same day, May 27, 2009, Defendant was served with Plaintiff's discovery requests.

After receiving no response for another two weeks, on June 11, 2009, the undersigned wrote Plaintiff's counsel again asking about the status of production, then overdue, and about Plaintiff's availability for deposition. (Ex. 4.) It bears repeating that Plaintiff had neither

apprised Defendant of the need for additional time, nor this Court.  Yet, it was only upon the undersigned's June 11 communication that Plaintiff's counsel responded on June 12, 2009. During that conversation, Plaintiff's counsel indicated that production was not ready; demanded that Defendant agree to a type of simultaneous exchange of documents, ***and refused to produce Plaintiff for any deposition until such time as all document discovery had been completed,*** including resolution of all disputes regarding such discovery.  Defendant agreed to, yet again, extend the production deadline to June 24, 2009, but vehemently disagreed with the remaining demands.

On June 12, 2009, the undersigned confirmed this conversation in an email.  (Ex. 5.) This email provided in pertinent part that: (a) Defendant agreed to extend the deadline for Plaintiff's responses to June 24 (meaning Plaintiff would have had, by then, two months for compliance); (b) stating that Plaintiff was required to file a motion for an extension of this time limitation with the Court (which has never occurred); (c) confirming that Defendant anticipated meeting its compliance deadline by or about June 29, or within that week; (d) confirming Defendant's objection to the demand for simultaneous, New York state court style production; (e) agreeing in principle to delay Plaintiff's deposition until after Defendant's initial production, but rejecting any notion that paper discovery had to be entirely complete before Plaintiff could be deposed; and (f) inquiring about Plaintiff's availability in July for that deposition.

Hearing no response for another eleven days, on June 23, the undersigned inquired again about Plaintiff's availability in July for deposition, and requested assurance that Plaintiff's production would be served the following day as promised.  (Ex. 6.)  On that afternoon, Plaintiff's counsel confirmed compliance would be sent via overnight mail on June 23 to Defendant's counsel, but again refused to provide deposition dates.  (Ex. 7.)  In response, the

undersigned wrote that Defendant's anticipated production would not be so voluminous that Plaintiff would not be prepared for deposition during the entire month of July.  (Id.)  The undersigned also provided Plaintiff with four dates for a potential deposition.  (Id.)

On June 30, 2009, the undersigned advised Plaintiff's counsel that Defendant's production had been sent via overnight delivery, and repeated that Defendant was still awaiting deposition dates.  (Ex. 8.)  After the initial production, on July 1, 2009, Defendant sent its First Supplemental Production of documents (relating to employee benefit plans at WWE) as promised in its initial production just a day or two prior.

On July 7, 2009, the undersigned asked Plaintiff's counsel via email why her repeated inquiries were being ignored, and stated that Defendant would be compelled to simply re-notice Plaintiff's deposition in the absence of any effort to schedule the same on a mutually convenient date.  On that day, Plaintiff's counsel finally responded, but only to state that Defendant's documents had just been received the week prior (but notably timely given the delay in serving Defendant in the first place); and that he needed time to confirm compliance before agreeing to any deposition.  (Ex. 9, at p. 2.)  Plaintiff's counsel's response triggered a series of email exchanges on that date, wherein: the undersigned reiterated her objection to the continued obstruction of Plaintiff's deposition, and stated that paper discovery did not have to be 100% complete, and Plaintiff 100% satisfied, before Plaintiff should have to appear to at least commence a deposition.  Thus, at this juncture, the Complaint had been pending for almost nine months, and still Defendant was being prevented from asking Plaintiff even one question about her Complaint.

After additional email exchanges on July 7, 2009, Plaintiff's counsel *finally wrote that he would follow up with potential deposition dates after his review of the documents produced.*

(Ex. 9, at p. 2.)  He then gratuitously added that Defendant's production "appear[ed] deficient" despite his simultaneous representation that he had not yet had an opportunity to review the documents.   In several reply emails, the undersigned reminded Plaintiff's counsel of the discovery deadlines, and warned him that she was considering filing a Rule 37 motion.  (Ex. 9, at p.1.)   Shortly thereafter, the undersigned pointed out to Plaintiff's counsel how *Plaintiff's* production was deficient; specifically, contrary to the Federal Rules, Plaintiff did not specify which documents were responsive to several Interrogatories; refused to produce CHRO documents, claiming Defendant "already had them"; and did not provide any medical records, instead offering to execute authorizations for Defendant to request them—but Plaintiff ***did not enclose an executed authorization.***  (Ex. 10, at p. 2-3.)

Worth noting, when challenged about the statement that Defendant's production was deficient, given Plaintiff's counsel's representation that he did not have time to review them, Plaintiff's counsel merely referred to the number of pages Defendant produced compared to those produced by Plaintiff.  Defendant pointed out that Plaintiff's production was substantial because it included hundreds of pages pertaining to her mitigation efforts and compensation and benefits at her new employment, such as employee handbooks or policies.   Further, the undersigned emphasized that the mere number of pages produced does not signify legally cognizable deficiencies.  Finally, the undersigned pointed out that many of Plaintiff's requests were patently overbroad and improper, and that Defendant had produced what was pertinent, leaving room for discussion as to potential compromise.  Plaintiff's counsel was reminded of the discovery deadline.

Early in the evening that same day, Plaintiff's counsel reiterated his refusal to produce Plaintiff for deposition, stating that Defendant had produced "very little" by way of electronic documents, and essentially demanding to know how quickly Defendant would "remedy the deficiencies." (Ex. 10, at p. 2.) He offered to produce his client for a limited deposition; i.e., she would refuse to answer any questions regarding documents that had not been produced. (Id.) Defendant's counsel then properly pointed out that the parties should discuss the Defendant's objections and attempt to reach a compromise, especially given the patently overbroad nature of Plaintiff's electronic discovery requests.[1] Defendant emphasized that it was not obligated to satisfy Plaintiff's subjective opinion about purported "deficiencies" before being able to depose the Plaintiff, especially in view of the passage of time since production during which Plaintiff had ample opportunity to address Defendant's objections. (Id., at p.1.) Defendant's counsel asked Plaintiff's counsel about his suggested compromises to such demands, reminding him, yet again, of her repeated attempts to notice Plaintiff's deposition, the time period which had elapsed during which he could easily have scheduled a "meet and confer", and offering to schedule such a discussion. (Id., at p. 2.)

On July 9, instead of substantively responding, Plaintiff's counsel merely stated that Defendant's production was "late" (which it was not); it was not a "good faith response"; and that if Defendant insisted on a deposition, he would restrict what could be asked. For obvious reasons, this "offer" was refused. Notably, no attempt to schedule a conference to discuss the

---

[1] A plain reading of some of these requests reveals their patently improper nature. Two examples illustrate this point. First, Plaintiff's Request Number Four requests "**All** communications relating to Plaintiff or her employment **during the time of her employment and for six (6) months following her separation**, including but not limited to: a. **all** emails between Plaintiff and Alex Romer; b. **all** instant messenger logs for conversations between Plaintiff and Alex Romer; c. **emails between any of the employees at WWE** that contain **any references to Plaintiff or Alex Romer**." Second, Plaintiff's Request Number Twelve requests "Mirrored images, as of this date, of **all hard drives from the computers of all persons involved in the investigation** of Plaintiff's complaints **and mirrored images to any servers** (including email servers) to which these persons may have had access." (Emphasis added.)

purported deficiencies was offered or suggested. In reply, once again, the undersigned warned Plaintiff's counsel that she would seek this Court's intervention.

Not until July 13, 2009, after several reminders, did Defendant receive an executed medical authorization from Plaintiff.  On that same date, Defendant re-noticed Plaintiff's deposition for August 6, 2009.  (Ex. 11.)  No response objecting to this date was received.  Nor has Plaintiff ever sought a protective order from this Court, choosing rather to simply ignore repeated deposition notices.

On August 3, the undersigned fractured her ankle and requested alternative August dates for this deposition.  ***On that same day, Plaintiff's counsel responded that he would provide new deposition dates "this week."  None came.***

Hearing nothing during the following seven days, on August 10, 2009, the undersigned repeated the request for possible deposition dates.  On that same day, Plaintiff sent a letter setting forth the alleged production deficiencies of Defendant's production.  Yet again, not one offer of compromise or request to discuss Defendant's objections were included in the letter. Furthermore, the letter was inaccurate; for example, the personnel file (absent medical and legal information) of Plaintiff's former supervisor had been produced, yet the letter alleged it had not been in any manner.  On August 12, still hearing nothing regarding deposition dates, Defendant re-noticed Plaintiff's deposition for September 14, 2009.  (Ex. 12.)

On August 18, 2009, the undersigned responded to Plaintiff's letter of August 10. Among other things, Defendant asked Plaintiff to elaborate and provide judicial precedent supporting her claim that Defendant was compelled to produce its hard drives to her counsel. Further, Defendant restated its willingness to discuss a compromise as to its other objections, and confirming Defendant's intention to proceed with the September 14 deposition of Plaintiff.

Hearing nothing for nearly two more weeks, on September 1, 2009, Plaintiff's counsel emailed the undersigned suggesting a "last shot" to resolve discovery disputes via a teleconference on September 3, 2009.  This invitation was accepted.

On September 3, counsel discussed Defendant's objections via telephone, and reached agreement on every item to which Defendant had objected.   On September 4, a written confirmation of the agreement was sent to Plaintiff's counsel via email.  (Ex. 13.)  Among other things, Plaintiff's counsel agreed to provide Defendant with a tailored list of email recipients/authors for Defendant to conduct searches and produce such emails.  *__This list was promised within the week.   Not receiving the promised modification of the request, on September 10, Plaintiff's counsel was sent a reminder email.   Despite these communications, this promised modification has never been received, including up to the date of this Motion.__*

On September 13, 2009, the undersigned asked if Plaintiff was available for deposition on September 21.   Plaintiff's counsel was not available on that date, but he did not offer alternative dates.  On that same day, Defendant requested alternative dates through September. No response was received.  On September 15, in accordance with one of the compromises reached, Defendant served Plaintiff with its Second Supplemental Production, containing certain phone records the Plaintiff had requested and which had been previously been produced via email on September 10.

On September 17, 2009, Defendant renoticed Plaintiff's deposition for October 9 via regular mail, facsimile and email.  (Ex. 14.)  No objection nor Motion for Protective Order was received.  On September 29, 2009, further pursuant to some compromises reached, Defendant served its Third Supplemental Production containing additional phone records the Plaintiff had

requested.  Further, on that same date, Defendant repeated its request for the tailored search terms and email review as promised several weeks prior.  (Ex. 15.)  Still no reply.

On October 6, 2009, hearing no response, Defendant served via overnight delivery Plaintiff with its Fourth Supplemental Production containing numerous emails between Plaintiff and her former supervisor.  A good number of these emails were duplicative of emails already produced.   In the cover letter enclosing the emails, Defendant once again requested that Plaintiff's counsel provide specific search terms to narrow down the review and production of remaining existing emails between Plaintiff and her former supervisor, and that he provide the list of WWE individuals for whom Plaintiff was requesting emails referring to her or her supervisor.  Still no reply.

On October 7, 2009, the undersigned confirmed the October 9 deposition of Plaintiff, to which her counsel[2] replied that she would not appear as he had just received additional production.  On that date, the undersigned reminded Plaintiff's counsel of the dilatory actions taken to date, and that the Defendant would seek Court intervention if Plaintiff did not appear on October 9 to at least commence a deposition.  Plaintiff's counsel replied the same date stating that he would be "happy" to go to Court, but if Defendant would give him more time to review documents and try another date, he would produce his client. (Ex. 16.)  Plaintiff's counsel then specifically stated that if Defendant would schedule the deposition for the week of October 19, they would appear.  (Ex. 17.)  On October 9, the undersigned offered October 19—no response. Accordingly, Defendant noticed the deposition for October 19, and sent said notice via fax, email, and regular mail (which she notably had been doing for most, if not all, of the notices). (Ex. 18.)

---

[2] Indeed, Plaintiff's counsel never responded to communications until depositions were being confirmed a day or two before the date scheduled, and each time Plaintiff's counsel responded that Plaintiff would not appear.

On October 13, the undersigned wrote Plaintiff's counsel to confirm the October 19 date, to which he responded: "seeking confirmation from my client now." (Ex. 19.)  He was reminded that he had been served with the notice the prior week.  (Id.)  On October 14, Plaintiff's counsel claimed he had "just received" the notice in the mail on October 13, which was untrue because the deposition notice had also been faxed and emailed the same day it was mailed on October 9, and that his client would give him "a bunch of days next week and the following week…so we can choose the best for all." (Ex. 20, at p. 2.)

In response, the undersigned reminded Plaintiff's counsel that he had received the notice the prior week, but that Defendant would agree to one last attempt to take Plaintiff's deposition. Plaintiff indicated his client was available on October 23 and October 30.   However, neither Defendant's counsel nor Defendant's representative were available on October 23, and October 30 was only two days before the discovery deadline-clearly untimely.   The final date offered by Plaintiff was October 29—again, only two days before the discovery deadline.   In fact, Defendant was already prejudiced by the fact that Plaintiff's first and only offer of deposition dates was during the final week of discovery, and never before this week.

No Defendant should have to litigate in this manner.  This is the type of conduct that should be sanctioned by this Court, and is sufficiently egregious to warrant outright dismissal of Plaintiff's Complaint.   In the alternative, in the event this Court deems dismissal not to be warranted, Defendant respectively contends that this Court should grant it:

(a)      an order compelling Plaintiff to appear for a deposition without further production by Defendant within the next 30 days;

(b)      prohibiting her from taking further discovery;

(c)        reimbursing Defendant for its fees incurred in having to pursue her deposition

for approximately six months, as well as for the filing and prosecution of this

Motion; and

(d)        for such other and further relief as this Court deems equitable, just and proper.

Certification of Mary A. Gambardella, Esquire regarding the exhaustion of good faith efforts to

resolve this dispute, are submitted with this Motion.

DEFENDANT,

WORLD WRESTLING ENTERTAINMENT, INC.


By:    /s/ Mary Gambardella
       Mary Gambardella, Esq.
       Federal Bar No. ct05386
       Erick I. Díaz, Esq.
       Federal Bar No. ct27023
       Wiggin and Dana LLP
       400 Atlantic Street
       Stamford, CT  06911-0325
       (203) 363-7662
       (203) 363-7676 (fax)
       mgambardella@wiggin.com
       ediaz@wiggin.com
       *Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

This will certify that, on October 26, 2009, a copy of the foregoing was filed electronically. Notice of this filing will be sent by email to all parties listed below by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

Patrick J. Boyd, Esq.
The Boyd Law Group, PLLC-NY
230 Park Avenue, Suite 1000
New York, NY 10169
212-808-3020
pboyd@theboydlawgroup.com
Lead Attorney
Pro Hac Vice
Counsel for Plaintiff

Peter L. Truebner, Esq.
1150 Summer St.
Stamford, CT 06905
203-323-4540
ptruebner@aol.com
Lead Attorney
Counsel for Plaintiff

                                        /s/ Erick I. Diaz
                                        Erick I. Diaz, Esq.

20324\4\2283725.1